In re Walter Clayton MULLINS
t/a Jill Mining Co., Debtor,

Talmadge FAMBROUGH, Administrator
of the Estate of Walter Clayton
Mullins,

and

Heirs of Walter Clayton
Mullins, Appellants,

v.

ESTATE of James E. NUNLEY, Appellee.

Bankruptcy No. 7–80–00727–HPA–11.

United States Bankruptcy Court,
W.D. Virginia,
Abingdon Division.

Oct. 20, 1995.

Howard J. Beck, Jr., Gentry, Locke, Rakes & Moore, Roanoke, Virginia, for Talmadge Fambrough, Administrator of the Estate of Walter Clayton Mullins.

Daniel K. Read, Jessee & Read, Abingdon, Virginia, for the Heirs of Walter Clayton Mullins.

Jo S. Widener, Bristol, Virginia, for the Estate of James E. Nunley.

John M. Lamie, Browning, Lamie & Sharp, Abingdon, Virginia, for Walter Clayton Mullins.

## MEMORANDUM OPINION AND ORDER

H. CLYDE PEARSON, Bankruptcy Judge.

■ Before the Court is the motion of the Administrator and Heirs of the Estate of the deceased Debtor to stay this Court's Order of September 7, 1995, awarding counsel fees to the Estate of the late James E. Nunley. Notice of Appeal was filed on behalf of the Administrator of the Estate of Walter C. Mullins, Deceased, Talmadge Frambrough of the State of Alabama, as well as the Heirs of the Estate of Walter C. Mullins, Deceased ("Heirs"). The Court is not advised as to whether or not the Heirs is a necessary party in interest and that matter is not before the Court. The Heirs apparently join in the Administrator's appeal. The Court entered an Order that stayed temporarily the Court's Order awarding the fees pending a hearing on the motion for stay. The Court having heard the motion for stay and considered the arguments of counsel and the record herein, accordingly, denies the motion.[1]

The Appellant gives the following as Statement of Issues on appeal: (1) whether the Court's findings of fact were clearly erroneous; (2) whether the Court erred in considering matters outside the record and not relevant to the issue; (3) whether the Court's legal conclusions, that a fee enhancement was appropriate in the case and that a reasonable fee for 51.96 hours of service rendered was $100,000.00, were erroneous; and (4) whether the Court's determination that a fee arrangement authorizing a surcharge for favorable results created a contingent fee arrangement is supported by the record.

■ A leading case in the Fourth Circuit on the subject of staying orders or judgments is *Long v. Robinson,* 432 F.2d 977 (1970), wherein the court cited four factors for consideration on the issue of whether or not a stay of an appealed order should be granted, as follows: (1) the likelihood of success of the appeal; (2) the harm that failure to grant the stay will result to the appellant; (3) the harm resulting to the appellee or others if the stay is granted; and (4) that granting stay will serve the public interest concerning the subject matter. The fourth element has no relationship to this case since the parties involved are only private parties.

In considering the other three elements, it is necessary for the Court to recite facts concerning the history of this matter including the Order of the Court awarding fees herein appealed. Counsel for the Administrator recited the foregoing four elements that the Fourth Circuit Court of Appeals has noted in oral arguments. Counsel for the Heirs of Mr. Mullins, likewise, joined in the argument of counsel for the administrator and adopted the same as part of their Appeal filed on behalf of the Heirs. We have in this matter the Estate of James E. Nunley, Deceased, being administered by the Executrix in the State of Virginia, which will administer any funds received from the Orders herein and make appropriate accounting for such fees as the fiduciary of this decedent's estate. The same is true with the Estate of Mr. Mullins in the State of Alabama where he

---

1. The Court gave the parties a period of time for filing written authorities; however, it appears that the issue is governed by the application of the Fourth Circuit Court's opinion in *Long v.* *Robinson* herein discussed and the Court concludes that written authorities, in addition to oral argument, is unnecessary.

apparently resided at the time of his death through the Administrator of that estate.

A review of the history of this case is necessary from the standpoint of the hearings to fix fees of present successor counsel, Mr. Lamie, counsel for the Disbursing Agent, Mr. Copeland, and counsel for the Estate of Mr. Nunley. These counsel fees grew out of the legal services rendered and ordered by this Court to be paid as administrative expense, under 11 U.S.C. §§ 503 and 507, from funds being disbursed in accordance with the Chapter 11 confirmed Plan. This Court entered an Order on January 23, 1995, when the funds from the litigation in Kentucky became available for the purpose of consummation of the Chapter 11 Plan. It directed that applications for allowance of administrative fees and expenses be filed by February 1, 1995 and that objections thereto be filed and served upon opposing parties on or before February 10, 1995. This Order was an effort to expedite hearings and determination of administrative expenses, fees, and costs and close this case as soon as feasible.

Hearings were held upon the applications filed by the three parties. The record reflects that only written or oral objections were noted primarily to the fee of Mr. Copeland. Neither the written objections nor the oral objections at hearing were made with any substance, to the fee application of Mr. Nunley. On February 14, 1995, Mr. Read, counsel for the Heirs, filed a belated written objection which dealt solely with the allowance of any fee to Mr. Copeland as Disbursing Agent, contending that such fees were unwarranted and were duplicative. Mr. Lamie, as successor counsel for the Debtor herein to Mr. Nunley, filed a memorandum of objection in which he generally objected to Mr. Copeland's fee and set forth therein acknowledging, as Debtor's counsel, that the Court could award larger and enhanced fees than those previously approved in the prior applications of the Nunley Estate and that such additional fees were proper. Although the Administrator, Fambrough, is apparently a member of the Alabama Bar, he neither appeared nor filed any objection in person or by counsel to any of the fees awarded by this Court, although he had due notice of all the proceedings thereon. There was no objection to Mr. Lamie's application and the Court approved generally the requests in the applications of Mr. Lamie and Mr. Copeland, as well as the Nunley application. No appeal has been noted to the fees of Mr. Lamie or Mr. Copeland.

This Court is compelled to note that when the funds became available from the litigation in Kentucky, they were paid into the registry of the State Court of Kentucky where the litigation was pending pursuant to its orders. When these funds became available, the Disbursing Agent, Mr. Copeland, who had previously been appointed counsel for himself by Order of this Court and under the Chapter 11 Plan confirmed by this Court, became gravely concerned over certain reported actions and efforts on the part of the administrator, Mr. Fambrough. The Administrator had engaged counsel in the State of Kentucky apparently for the purpose of seeking to thwart the procedures and orders in this Court and to prevent the disbursement of those funds to Mr. Copeland as Disbursing Agent in this case. Mr. Copeland, over the vigorous objections of these parties, properly filed proceedings in this Court to enjoin and prohibit the Administrator from subverting the processes, procedures, and orders of this Court in his duties as Disbursing/Escrow Agent for the confirmed Plan in payment of administrative costs, expenses, fees and creditors' claims as provided therein.

This Court, after notice to all proper parties, including the Administrator, heard these matters brought by Mr. Copeland in his capacity as Disbursing Agent representing the creditors in this case. It is now clear that absent the orders of this Court, from pleadings filed by Mr. Copeland, his efforts would have been thwarted by the Administrator and his counsel in Kentucky to the detriment of the creditors and in contravention of this Court's orders in this case. The efforts of the Administrator, his counsel, and others were so flagrant that this Court directed Mr. Copeland to bring these matters before the Court for contempt and sanctions on behalf of the creditors in his capacity as Disbursing Agent. Those proceedings remain unresolved before the Court.

As appears from this Court's opinion fixing the fees of the Nunley Estate, this case has been ongoing for approximately 16 years. Mr. Nunley, who was engaged in 1980 as counsel to file the case and render service in the same, died in 1986. He had devoted approximately six years of his time and effort to this Debtor's case. Thereafter, the case proceeded by Mr. Lamie as successor counsel.

In winding up the Estate of Mr. Nunley, his wife, as Executor of his estate, apparently sought to conclude his affairs and resolve his pending cases, requested that this Court approve a fee for his services in the amount of $5,100.96 and expenses of $349.40.[2] This was an addition to a fee theretofore allowed by this Court to Mr. Nunley by Order on September 30, 1982, in which the Court awarded $3,500 fee and $353.30 cost and expenses.

The Court notes that this application only recites services to November 22, 1983. It notes time expended of approximately 51 or 52 hours, which the Notice of Appeal alludes to. This attorney, however, continued to render service to this Debtor and this Estate until his death in 1986, for a period of three additional years. The many hours of service rendered may not have been included in the docket entries available to counsel; however, this, by no means, establishes that this attorney only expended 51 hours in his service. In fact, the docket sheet does not contain an entry beyond August 24, 1983, until March 1987. This Court takes judicial notice that the time expended by an attorney is not confined solely to those items appearing on the docket register of a Clerk's Office. Time expended is only one factor for consideration of fees under the Fourth Circuit rulings.

The Court approved the fees and expenses and directed that these fees to the Nunley Estate be paid by the Debtor absent which the case would be dismissed or converted in an effort to seek a conclusion thereof. The fees were not paid and, indeed, have never been paid, and this Court did convert this case to Chapter 7. Thereafter, Mr. Lamie was employed as successor to Mr. Nunley and filed a motion to reopen the case and

reconvert the same to Chapter 11 and reinstate the confirmed Plan. In the application and motion on behalf of Mr. Mullins to reinstate, Mr. Lamie documented in detail the value of the services of Mr. Nunley to this Estate in preparing a Plan and obtaining confirmation of the same for the benefit of the Debtor and all the creditors herein. The motion stated that it was essential that the Chapter 11 case continue on the docket to permit the case to go forward in Kentucky in the hopes that funds from the litigation would be available for payment to creditors hereafter. The Court, upon hearing said motion, agreed with the Debtor to reinstate the case and reconverted the same to Chapter 11 and reinstated the Plan where it has proceeded to this date.

The reinstatement, in effect, vacated the attorney fee awarded by the Court previously. This proceeding clearly demonstrated what this Court held in the Order approving fee—that it was essentially the services of Mr. Nunley that resulted in the recovery on behalf of these creditors, as well as the Administrator and Heirs of the Mullins Estate, and permitted the litigation to go forward to its conclusion in Kentucky. This resulted in the creditors being paid 100 percent on their claims. Additionally, his efforts alone resulted in $300,000.00 accruing to the Administrator and the Heirs of the Estate of Mr. Mullins because Mr. Nunley had provided in the Plan for the principal only, without interest, for creditors, to which they agreed and whose claims were allowed. At the time the $5,000.00 fee Order was entered, a "surcharge for favorable results" was unknown and could not be considered. The litigation in Kentucky was ongoing and was not concluded until approximately January 1995.

As stated from the bench, upon hearing of the motion to stay, the award was a modest and conservative award under the circumstances; that this award of an enhancement of fees above that requested by the estate was clearly called for and justified by numerous authorities cited therein. This Court is fully convinced that if the deceased attorney had filed the application, it would have been

---

2. Interestingly, counsel for Fambrough, as Clerk of this Court, was vigorously carrying out the

Administrative Office's policy of hastily closing cases.

appropriate to request an amount of at least twice what this Court has awarded; and that the Debtor, if living, would have acquiesced in the request knowing the value of the services rendered in his time of need. This would have been so because it is apparent that the recovery of approximately 1.9 million dollars due to this counsel's efforts, with a savings of $300,000.00 in interest alone, warrants same.

Accordingly, it is the conclusion of the Court that the elements set forth in the Fourth Circuit holding that the likelihood of success is lacking; that the harm to the appellant and the appellee is nonexistent and that the fourth ground is inapplicable.

■ The Notice of Appeal alludes to the fact that the Court set forth in the opinion appealed extraneous matters that were not a part of the record—apparently, alluding to the references as to the personal and professional qualifications and diligence of Mr. Nunley in handling of his cases without up-front fee and his work with his clients. In *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (1978), the Fourth Circuit states as follows:

"It is well established that the allowance of attorney's fees is within the judicial discretion of the trial judge, who has close and intimate knowledge of the efforts expended and the value of the services rendered."

This Court, in its efforts to review the file in this case, since the attorney is deceased and to do justice to the parties, has reviewed the qualifications of the attorney, his personal integrity, and professionalism as a member of the legal profession, which compelled him to accept a case with substantial involvement of his time and effort without the ability of his client to even pay one cent upon his fee. Recognizing the needs of his client, he voluntarily *accepted as a part of his duty,* as a member of the legal profession and his inherent professionalism as a member thereof, the charge of his client and represented his client to the best of his ability under the circumstances and conditions that prevailed, with the obvious understanding that there would be a surcharge available if favorable results were obtained in his client's case. A review of the qualifications and the efforts on the part of this counsel, in light of his service and the quality thereof as it pertained to the case before the Court, was only available by reviewing the court file and considering the qualifications of this attorney and the services he rendered, as well as the trial court's knowledge of his efforts. This is clearly in keeping with the admonition of the Fourth Circuit where it states that fixing of fees is clearly within the intimate knowledge and the efforts of the attorney expended and the value of the services rendered appearing to the trial court.

Since the Appellants raised the question of professionalism and extraneous matters in the appeal of this matter, the Court finds it appropriate to quote from the *Virginia State Bar Professional Handbook,* 1986 Ed., Sec. II, Va.Code of Professional Responsibility, under the title, "Ethical Considerations," E.C. 1–1, it is stated: "A basic tenet of the professional responsibility of lawyers is that every person in our society should have ready access to the independent professional services of a lawyer of integrity and competence."

Mr. Nunley, in accepting service as counsel to this Debtor, was complying with the tenet of that ethical consideration.

Under DR 2–105. Fees (C), the Code states: "A fee may be contingent on the outcome of the matter for which the service is rendered ..." with certain exceptions not applicable here.

Under Paragraph EC 2–18, under the heading "Financial Ability to Employ Counsel," it is stated:

The legal profession cannot remain a viable force in fulfilling its role in our society unless its members receive adequate compensation for services rendered, and reasonable fees should be charged in appropriate cases to clients able to pay them. Nevertheless, persons unable to pay all or a portion of a reasonable fee should be able to obtain necessary legal services, and lawyers should support and participate in ethical activities designed to achieve that objective.

Under Paragraph EC 2–20, it states:

The determination of the reasonableness of a fee requires consideration of all relevant circumstances. The fees of a lawyer will vary according to many factors, including the time required, his experience, ability, and reputation, the nature of the employment, the responsibility involved and the results obtained.

Under Paragraph EC 2–22, as it relates to contingent fees, this surcharge provision is clearly applicable and states:

Contingent fee arrangements in civil cases have long been commonly accepted in the United States in proceedings to enforce claims. The historical bases of their acceptance are that (1) they often, and in a variety of circumstances, provide the only practical means by which one having a claim against another can economically afford, finance, and obtain the services of a competent lawyer to prosecute his claim and (2) a successful prosecution of the claim produces a res out of which the fee can be paid.

Under Paragraph EC 2–26, the Code further states:

A layman whose financial ability is not sufficient to permit payment of any fee cannot obtain legal services, other than in cases where a contingent fee is appropriate, unless the services are provided for him. Even a person of moderate means may be unable to pay a reasonable fee which is large because of the complexity, novelty, or difficulty of the problem or similar factors.

Also, in keeping with the duty of a member of the legal profession to render services to the needy and those unable to pay the fee up front, Section EC 2–27 sets forth as follows:

Historically, the need for legal services of those unable to pay reasonable fees has been made in part by lawyers who donated their services or accepted court appointments on behalf of such individuals. The basic responsibility for providing legal services for those unable to pay ultimately rests upon the individual lawyer, and personal involvement in the problems of the disadvantaged can be one of the most rewarding experiences in the life of a lawyer. Every lawyer, regardless of professional prominence or professional workload, should find time to participate in serving the disadvantaged. The rendition of free legal services to those unable to pay reasonable fees continues to be an obligation of each lawyer, but the efforts of individual lawyers are often not enough to meet the need.[3]

It is not the purpose of this Court to attempt to teach legal ethic lessons; however, this Court does feel that in view of the reference to the extraneous considerations of the legal ability and professionalism of this attorney that in keeping with the Fourth Circuit's admonition, the foregoing ethical provisions of the state bar are clearly appropriate for consideration.

■ The Court, further, has applied, in its decision fixing the fee herein, the 12 elements or factors set forth by the Fourth Circuit in *Barber,* specifically, the following: (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skills required to properly perform these legal services rendered; (8) the amount in controversy and results obtained, which is clearly applicable in this case; (9) the experience, reputation, and ability of the attorney, which only the Court can assess whose application is before it, as well as the other factors set forth therein.

Accordingly, having reviewed the relevant authorities, it is the conclusion of the Court that the stay should be denied; however, the stay will be continued for a period of ten (10) days to permit the Appellants to seek a review of this Order. **SO ORDERED.**

---

3. The Virginia State Bar now requires Legal Ethics CLE attendance yearly. It has obviously been made aware of those firms who publicly proclaim that they do not do *pro bono* work. If Mr. Nunley had been one of those, he would have politely escorted Mr. Mullins out of this office upon learning he could not pay a fee up front.